E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARIA ELENA STITELER (Cal. Bar No. 296086)
Assistant United States Attorney
International Narcotics, Money Laundering,
  & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6148
     Facsimile: (213) 894-0141
     E-mail:    maria.stiteler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-329(A)-PSG-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT SERGIO PETRONI; EXHIBITS A-B |
| v. | |
| SERGIO PETRONI, | **(PUBLIC)** |
| Defendant. | Hearing Date: January 20, 2023<br>Hearing Time: 10:00 AM<br>Location:    Courtroom of the<br>             Hon. Philip S.<br>             Gutierrez |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Maria Elena Stiteler, hereby files its Sentencing Position for defendant Sergio Petroni.

This Sentencing Position is based upon the attached Memorandum of Points and Authorities and the exhibits attached thereto, the Presentence Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.  The

//

United States respectfully requests the opportunity to supplement its position or otherwise respond to defendant as may become necessary.

Dated: January 6, 2023                 Respectfully submitted,

                                          E. MARTIN ESTRADA
                                        United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                            */s/ Maria Elena Stiteler*
                                        MARIA ELENA STITELER
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant is a long-term, major narcotics trafficker in the South Bay area. For several years, defendant arranged and, with a co-conspirator, executed sales of fentanyl, heroin, and methamphetamine to customers. Defendant was successful at what he did. As he explained when he was arrested in July 2020, selling drugs was "just such fast money." Indeed, the amount of drugs in defendant's possession when he was arrested -- over one kilogram of methamphetamine and 737 grams of fentanyl, along with over $65,000 in cash -- confirms his success. However, defendant's success came with deadly consequences. In October 2018, defendant sold fentanyl to J.S., who died a few days later of an overdose. And in April 2020, defendant sold fentanyl to a customer, who shared it with E.W., who died the next morning of a fentanyl overdose.

Defendant and the government have entered into a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), pursuant to which defendant pleaded guilty to Counts Nine and Ten of the First Superseding Indictment, which charge defendant with possession with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and (vi), respectively. As part of the plea agreement, the government has agreed to dismiss the remaining counts of the First Superseding Indictment against defendant, including Count Three, which charges defendant for distribution of fentanyl resulting in death and which carries a twenty-year mandatory minimum term of imprisonment.

In the binding plea agreement, the parties agreed that a sentence between 13 and 18 years, or 156 and 216 months, is

appropriate here, taking into account the factors listed in 18 U.S.C. § 3553(a).  In the Presentence Investigation Report ("PSR"), the United States Probation & Pretrial Services Office ("USPO") calculated a total offense level of 32 and a criminal history category of IV, resulting in a Guidelines range of 168 to 210 months' imprisonment.  (Dkt. 232 (PSR).)  The USPO recommended that the Court impose a sentence of: (1) a term of 165 months' imprisonment, at the low-end of the Guidelines range (with a downward departure of three months pursuant to U.S.S.G. § 5K2.23); (2) a five-year term of supervised release; and (3) a mandatory special assessment of $200. (Dkt. 231 (Recomm. Letter).)

The government concurs with the USPO's Guidelines calculations, but disagrees with the recommended sentence.  For the reasons set forth below, the government requests a sentence of 201 months' imprisonment, a five-year period of supervised release, and a special assessment of $200.

## II.   FACTUAL BACKGROUND

As admitted in the Plea Agreement, defendant conspired to distribute heroin, fentanyl, and methamphetamine to customers over several years.  (Dkt. 182 (Plea Agreement) ¶ 16; PSR ¶¶ 12-16.)  As part of this conspiracy, defendant would arrange to provide drugs to customers, and defendant and his co-conspirator, co-defendant Zoey Martinez, would provide the drugs to customers as arranged.  (Plea Agreement ¶ 16.)  The effects of defendant's conspiracy were devastating -- at least two young men died shortly after ingesting heroin and/or fentanyl purchased from defendant.  (Dkt. 1 (Complaint) ¶¶ 10-33.)

**Death of Victim J.S.:** On October 8, 2018, defendant sold fentanyl to J.S. for approximately $50. (Plea Agreement ¶ 16.) One day later, on October 9, 2018, J.S.'s wife found J.S. non-responsive. (See Complaint ¶ 10.) Responding officers found a piece of tinfoil with burn marks on it and a straw next to J.S., and a nurse found a bag with suspected narcotics that later tested positive for heroin and fentanyl in J.S.'s shoe when he was treated at the hospital. (Id. ¶¶ 10-11.) On October 10, 2018, J.S. was pronounced dead. According to the coroner, J.S. died due to drug use, with fentanyl and other drugs in his system at time of death. (Plea Agreement ¶ 16; Complaint ¶ 12.)

**Defendant's First Arrest:** Several weeks after J.S.'s death, police officers arrested defendant for possessing methamphetamine with intent to distribute it. (Plea Agreement ¶ 16.) Defendant was charged and convicted of this crime, served his sentence, and then entered a rehabilitation program. However, despite this, by at least April 2020, defendant re-engaged in the conspiracy and resumed trafficking drugs.

**Death of Victim E.W.:** On the afternoon of April 19, 2020, defendant sold fentanyl to a customer with the initials M.P.,[1] who in turn provided a portion of that fentanyl to E.W. (Plea Agreement ¶ 16; Complaint ¶¶ 27, 30, 43(b)-(c).) After receiving the fentanyl from M.P., E.W. spent the rest of the evening at a barbecue at his sister's house before returning to his parents' house where he was

---

[1] M.P. died of an apparently unrelated fentanyl overdose several months after defendant was charged in this case. M.P. was an essential witness in the government's case against defendant for distributing fentanyl causing the overdose death of E.W., as set forth in Count Three of the First Superseding Indictment.

3

staying.  (See Complaint ¶ 26(b).)  The next morning, E.W.'s parents found E.W. unresponsive in his bedroom; officers found a piece of tinfoil with burn marks and a straw nearby.  (Complaint ¶ 24.)  E.W. was declared dead that day at approximately 11:39 a.m.  (Complaint ¶ 25.)  The coroner's report stated that fentanyl intoxication was the cause of death.  (Id.; Plea Agreement ¶ 16.)

**Defendant's Continued Sales**:  Through May and June 2020, defendant continued to sell drugs to multiple customers, which both defendant and his co-conspirator, Zoey Martinez, delivered.  (Plea Agreement ¶ 16; Complaint ¶¶ 34-60.)  At least one of these sales took place within 1,000 feet of a school.  (Plea Agreement ¶ 16.)

**Defendant's Second Arrest**:  On July 16, 2020, agents obtained federal warrants to arrest defendant and search the hotel room where he was staying with a second co-conspirator, co-defendant Ryan Delfine.  During the search, agents found 1,222.7 grams of actual methamphetamine and 737 grams of fentanyl, LSD, Ketamine, MDMA, scales, ziplock bags in varying sizes, drug paraphernalia, and approximately $65,474.00 in the hotel room safe.  (Plea Agreement ¶ 16.)  In a post-arrest interview, defendant admitted to possessing fentanyl and a "good amount" of cash in the hotel room, and admitted that the cash included proceeds of drug sales.  (Ex. A[2] (report of post-arrest interview), at 3-4.)  Later in the interview, defendant described selling drugs as "just such fast money.  It's stupid." (Id. at 5.)

**Defendant's Cell Phone**:  A search of defendant's cell phone showed that defendant used the Telegram messaging application to

---

[2] All exhibits are attached hereto.

4

advertise and sell multiple drugs, including methamphetamine, heroin, heroin mixed with fentanyl, and fentanyl, across the country between March and July 2020.  (<u>See generally</u> Ex. B (excerpts of Telegram messages seized from defendant's cell phone[3]).)

[redacted]

### III. THE PRESENTENCE REPORT

The USPO calculated a total offense level of 32 based on the following Guidelines calculation:

| | | |
|---|---|---|
| Base Offense Level: | 35 | U.S.S.G. §§ 2D1.1(a)(5), (c)(3); 2D1.2(a)(2) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a), (b) |
| **Total Offense Level**: | **32** | |

(PSR ¶¶ 33-59.)  The USPO's determination of defendant's base offense level was based on the total quantity of seized drugs that defendant trafficked from October 4, 2018, to July 16, 2020, which is in accordance with the plea agreement and the government agrees with. The USPO further determined, and the government agrees, that

---

[3] Defendant's Telegram username is "1055874490 Fleshgod 5150."

defendant had a criminal history category of IV,[4] resulting in a Guidelines imprisonment range of 168 to 210 months.  The USPO recommended a sentence of 165 months, departing downwards by three months from the low end of the Guidelines range pursuant to U.S.S.G. § 5K2.23 for the time defendant served for his August 19, 2019 conviction.

## IV. SENTENCING POSITION

The government concurs with the USPO's Guidelines calculations, including that defendant's Guidelines range is 168 to 210 months' imprisonment; however, based on the factors set forth in 18 U.S.C. § 3553(a), the government believes that the appropriate sentence in this case is 201 months' imprisonment, followed by a five-year period of supervised release, and a $200 special assessment.

### A. Nature and Circumstances of the Offenses

First, the nature, circumstances, and seriousness of defendant's offenses are considerably aggravating.  See 18 U.S.C. § 3553(a)(1). Defendant participated in a long-ranging conspiracy to sell heroin, fentanyl, and methamphetamine to customers.  Defendant's role in this conspiracy was not minor.  He negotiated transactions with customers, telling customers where, when, and for how much they could purchase narcotics; he and his girlfriend, co-defendant Zoey Martinez, delivered the drugs.  Further, at his July 16, 2020 arrest, defendant possessed 1,222.7 grams of actual methamphetamine and 737 grams of

---

[4] Defendant's criminal history did not include his August 19, 2019 conviction for possession of methamphetamine for sale, as this conviction is relevant conduct to defendant's conspiracy.  Had it not been relevant conduct, it would have been defendant's second "controlled substance offense," rendering defendant a career offender subject to a higher Guidelines range and criminal history category. (See PSR ¶ 69.)

6

fentanyl -- far more than any one person could use -- in addition to more than $65,000 in cash, which defendant admitted included drug proceeds. Defendant continued to sell dangerous and deadly drugs even after being arrested for such conduct in 2018, and even after attending rehab. Moreover, defendant was so reckless in his drug dealing that he sold drugs near a school. By his own words, defendant trafficked drugs because it was easy money, entirely disregarding the permanent and devastating effects that it caused to his customers.

Here, the effects of defendant's crimes were devastating to communities and to individuals. Indeed, two young men died shortly after using drugs purchased from defendant. Given the proximity between defendant's sales and the victims' overdoses, the government disagrees with USPO's conclusion that it is unclear whether the specific fentanyl sold by defendant caused the victims' deaths here. Defendant's actions caused permanent, irreparable damage to the loved ones -- the parents, sisters, friends, and wife -- that victims J.S. and E.W. left behind. Although these deaths are relevant conduct, they are not accounted for in defendant's Guidelines range.

Accordingly, the government believes that the seriousness and breadth of defendant's crimes support a significant sentence, well above the low-end of the Guidelines range.

**B.   History and Characteristics of Defendant**

Defendant's history and characteristics contain both aggravating and mitigating factors. In aggravation, defendant has a long history of drug trafficking and of entirely disregarding the criminal justice system. Specifically, defendant has six prior convictions, including two prior controlled substances offenses, and four prior arrests for

possessing controlled substances for sale.  (PSR ¶¶ 64-69, 75-78.) Defendant committed the offenses in this case while on state probation.  (PSR ¶ 71.)  And finally, while on pretrial supervision in this case, defendant reoffended twice before his bond was revoked: first, relapsing on methamphetamine in March 2022, and second, colliding with five parked and unoccupied vehicles while driving under the influence in June 2022.  (PSR ¶¶ 15-17.)

Further, despite defendant's apparent lack of current assets (PSR ¶¶ 109-111), he did not resort to drug trafficking out of financial need.  First, defendant has a high school education and a specialized certification, such that defendant had law-abiding employment options.  (PSR ¶¶ 103-104.)  Moreover, in defendant's July 2020 post-arrest interview, he indicated that he received several thousand dollars per month from an inheritance; after his indictment in this case, defendant contributed $70,000 from a trust in his name towards property purchased in his father's name.  Defendant did not need to deal in drugs to fund his habit; rather, he did so because it was "just such fast money."

However, while much of defendant's history and characteristics are aggravating, in mitigation, he has accepted responsibility and pleaded guilty.  Second, while the government will not fully elaborate on these facts here, the PSR detailed some difficult events in defendant's own life, and it does appear that defendant has struggled with addiction over many years.  (PSR ¶¶ 84-87, 97-101.) Considering the combination of aggravating and mitigating facts set forth above and the seriousness of defendant's offenses, the government submits that a sentence of 201 months is appropriate here.

**C.  Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public**

The sentence must satisfy defendant's need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public.

Defendant distributed heroin, fentanyl, and methamphetamine over many months -- a serious conspiracy that not only posed a real danger to the community, but also led to the deaths of two men.  Here, there is a particularly strong need for the sentence to deter defendant and others from committing future crimes with deadly consequences.  See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed must "afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence); United States v. Goff, 501 F.3d 250, 261 (3d Cir. 2007).  As such, a 201-month sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter defendant from committing further crimes, and protect the public from further crimes of the defendant.

**D.  Need to Avoid Unwarranted Sentencing Disparities**

In addition to the factors above, the Court must consider the need for the sentence to avoid unwarranted sentence disparities among similarly situated defendants.  Defendant is not similarly situated to the other defendants in this case.[5]  Unlike the other two defendants, defendant participated in all of the charged conduct.  By

---

[5] The Court sentenced co-defendant Zoey Martinez to a probationary sentence and co-defendant Ryan Delfine to a term of imprisonment of 60 months.

9

July 2020, when defendant was arrested with a large amount of methamphetamine and fentanyl in his possession, defendant Martinez had ended her involvement in the conspiracy, so she was not charged in Counts Nine and Ten. Similarly, defendant Delfine had only just began to work with defendant in July 2020, so she was not charged in Counts One through Eight. Further, neither defendants Martinez nor Delfine is directly linked to the sales that led to J.S. and E.W.'s deaths. Finally, in addition to her lower level of culpability, defendant Martinez had a far less significant criminal history than defendant, with no prior felonies. The government's recommended sentence appropriately accounts for the § 3553(a) factors while avoiding any unwarranted disparity.

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a within-Guidelines term of imprisonment of 201 months, followed by a five-year term of supervised release, and a special assessment of $200.

**EXHIBIT A**

**(filed under seal)**

# EXHIBIT B
# (filed under seal)